In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3471

ROGER FORREST, JR.,

*Plaintiff-Appellant,*

*v.*

MICHAEL PRINE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 4:07-cv-04086-JAG—**John A. Gorman**, *Magistrate Judge*.

ARGUED APRIL 14, 2010—DECIDED AUGUST 31, 2010

Before POSNER, RIPPLE and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Roger Forrest brought this action against Officer Michael Prine and Rock Island County Sheriff Michael Huff, asserting, among other things, an excessive force claim against Officer Prine under 42 U.S.C. § 1983. The district court granted summary judgment for the defendants. Mr. Forrest appeals only the dismissal of his excessive force claim against Officer Prine. For the reasons stated in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

On March 8, 2007, the police responded to a 911 call from Mr. Forrest's son, who reported that Mr. Forrest was hitting people in their home. The police arrived and found Mr. Forrest to be uncooperative. The police forcefully entered the home, and an altercation ensued during which Mr. Forrest struck a police officer in the face. In order to subdue Mr. Forrest, the police employed a taser device several times. Several police officers then escorted Mr. Forrest to the Rock Island County Jail. Mr. Forrest ultimately was charged with aggravated battery of a police officer, a felony charge.

Rock Island County has a policy that any person charged with a felony is required to submit to a complete strip search as part of the booking process in order to ensure that no weapons or contraband are brought into the jail. This policy is meant to protect the safety of imprisoned individuals and officers in the jail. The strip search includes a visual body cavity search.

Mr. Forrest was escorted to a holding cell for the strip search. He estimated that between six and seven officers remained in the area. The officers observed that Mr. Forrest appeared to be under the influence of something, possibly alcohol. Mr. Forrest removed most of his clothing, but refused to remove his underwear. Officer Michael Prine entered the cell with a taser and ordered Mr. Forrest to remove his underwear. Officer Prine had

been trained in the use of tasers. Although he had not arrested Mr. Forrest earlier that evening, Officer Prine was aware that a taser already had been employed several times on Mr. Forrest during the course of the arrest. Officer Prine warned Mr. Forrest that he would employ the taser if he did not comply with the strip search commands. Mr. Forrest called the officers "faggots" and used other expletives. *See* Forrest Dep. 48:19-22, Oct. 22, 2008; Prine Dep. 33:23-25, Oct. 22, 2008.

Mr. Forrest eventually removed his underwear but would not comply with the rest of the strip search commands.[1] Shouting obscenities and with fists clenched, Mr. Forrest began pacing back and forth while facing Officer Prine.[2] Mr. Forrest never approached Officer Prine and remained 7-10 feet away. Over the course of several minutes, Officer Prine repeatedly told Mr. Forrest that unless he complied with the strip search

[1] In accordance with the jail's established strip search protocols, the officers commanded Mr. Forrest to bend over, spread his buttocks, squat down and cough.

[2] Mr. Forrest apparently was disabled due to a leg injury, and had, *on some occasions in the past*, walked with a cane. However, Mr. Forrest did not testify that he was limping on this occasion, and the officers denied that Mr. Forrest exhibited a limp during the course of events that evening. Thus, no evidence exists from which we may draw the reasonable inference that Mr. Forrest was limping on March 8, 2007.

At the time of the events in question, Mr. Forrest was 42 years old. His approximate height and weight were 5'11" and 280 pounds. Officer Prine was 6'1" and weighed 295 pounds.

commands, the officer would use the taser. Officer Prine testified that he did not believe it was safe to approach Mr. Forrest any closer.

Officer Prine finally employed the taser on Mr. Forrest. The officer held the taser with both hands, outstretched from his body. The officer testified that he aimed the taser gun at Mr. Forrest's upper back. Another police officer, Christopher Young, testified that, at some point during the events, he saw the taser's laser sighted on Mr. Forrest's torso. A third officer, Michael Mendoza, testified similarly, clarifying that the laser was sighted "chest to waist." Mendoza Dep. 54:11, Mar. 23, 2009. Mr. Forrest testified that the taser was pointed at his face, although he could not see the red dot of the taser's laser. He told Officer Prine to get the taser out of his face. Forrest Dep. 46:24-47:11, Oct. 22, 2008.

Officer Prine testified that, as he fired the taser, Mr. Forrest "kind of bent down." Prine Dep. 64:13-16, Oct. 22, 2008. Officer Young testified that Mr. Forrest "ducked down and turned just as the taser was deployed." Young Aff. 2, June 23, 2009. Officer Mendoza testified that Mr. Forrest made some kind of unusual movement, "almost like a duck." Mendoza Dep. 54:19-22, Mar. 23, 2009. Mr. Forrest did not testify to the contrary.[3]

_____

[3] In his appellate brief, Mr. Forrest states that he testified that he did not duck. *See* Appellant's Br. 6-7. However he does not comply with Federal Rules of Appellate Procedure 10(b)(2) and 28(a)(7), or Circuit Rule 28(c), which require Mr. Forrest to

(continued...)

One taser discharge hit Mr. Forrest's face, near his eye; another dart struck his arm. Mr. Forrest fell and struck his face against the back wall of the holding cell, causing a mild depressed deformity of his left zygomatic arch (his cheekbone).

**B.**

Mr. Forrest brought this action against Officer Prine and Sheriff Huff. The section 1983 count relevant to this appeal alleged that Officer Prine employed excessive force when he used the taser to subdue Mr. Forrest. Mr. Forrest alleged that he sustained an injury when he struck the wall of the cell; he does not allege an injury from the actual impact of the taser. The complaint identified the Fourth and Fourteenth Amendments to the Constitution as bases for the excessive force claim. Officer Prine moved for summary judgment, contending that no genuine issue of material fact existed as to whether he had used excessive force. The district court, applying the Eighth Amendment standard prohibiting the malicious and sadistic infliction of harm, agreed and granted summary judgment for Officer Prine. Mr. Forrest appeals only that portion of the district court's ruling.

---

(...continued)

support his contention with citations to the summary judgment record. We have found no support for Mr. Forrest's contention, and, thus, we shall not credit it.

## II

## DISCUSSION

We review de novo a district court's grant of summary judgment. *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). All disputed facts are resolved and reasonable inferences are drawn in favor of the non-moving party, Mr. Forrest. *See Lewis*, 581 F.3d at 472; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). The summary judgment standard

> mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . . [T]he genuine issue summary judgment standard is very close to the reasonable jury directed verdict standard . . . . [T]he inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson*, 477 U.S. at 250-51; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To prevail in this section 1983 action, Mr. Forrest must establish (1) that he had a constitutionally protected right, (2) that he was deprived of that right, (3) that Officer Prine intentionally deprived him of that right

and (4) that Officer Prine acted under color of state law. *See Cruz v. Safford*, 579 F.3d 840, 843-44 (7th Cir. 2009). The third and fourth elements are not at issue in this case. Our focus, therefore, must be on the first and second elements.

## A.

Although Mr. Forrest's complaint alleges that Officer Prine deprived him of his Fourth Amendment right to be free from unreasonable search and seizure, he invites our attention primarily to authorities based on the Fourteenth Amendment. As the district court appeared to recognize, the Fourth Amendment right to be free from unreasonable searches and seizures has temporal limitations, *see Lee v. City of Chicago*, 330 F.3d 456, 462-63 (7th Cir. 2003), and does not extend throughout the entire pretrial detention process, *see Payne v. Churchich*, 161 F.3d 1030, 1039 & n.10 (7th Cir. 1998); *Wilkins v. May*, 872 F.2d 190, 192-94 (7th Cir. 1989). Although we have not yet had occasion to define precisely the contours of those temporal limitations, the events that unfolded in this case place Mr. Forrest's claim outside the temporal bounds of the Fourth Amendment. *Cf. Wilkins*, 872 F.2d at 192-93 (concluding that no Fourth Amendment right applied at the moment the plaintiff alleged excessive force in a pretrial prison setting because the plaintiff had been "seized" for purposes of the Fourth Amendment when he was arrested previously, and not when the excessive force incident occurred). *See generally* Mitchell W. Karsch, Note, *Excessive*

*Force and the Fourth Amendment: When Does Seizure End?*, 58 Fordham L. Rev. 823 (1990).

As the case comes to us, therefore, Mr. Forrest's primary contention is that he was deprived of his Fourteenth Amendment right to due process when Officer Prine employed the taser on him. This provision provides the appropriate constitutional standard against which to measure Mr. Forrest's claim because he was a pretrial detainee at the time he alleges his constitutional rights were violated. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 758 (7th Cir. 2005) ("Because Moreland was a pretrial detainee in the jail at the time of his death in custody, the plaintiffs' claim falls within the Fourteenth Amendment . . . ."); *Payne*, 161 F.3d at 1039-40 ("[I]t is clear that Mr. Hicks essentially is alleging maltreatment while in custody as a pretrial detainee. Under the prevailing case law, such allegations are treated as claims under the Due Process Clause of the Fourteenth Amendment."); *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996) ("Between the status of free citizen and convicted prisoner lies the 'pretrial detainee,' protected by the due process clause of the Fourteenth Amendment."). In a similar context, we have explained:

> The scope of an individual's right to be free from punishment—and, derivatively, the basis for an excessive force action brought under § 1983— hinges on his status within the criminal justice system. On one end of the spectrum are sentenced prisoners. The Eighth Amendment protects these individuals only from the infliction of cruel and

> unusual punishment, which is often defined in the prison context as the unnecessary and wanton infliction of pain.
>
> Pretrial detainees, by contrast, have not been convicted or sentenced and thus are not yet punishable under the law. As such, pretrial detainees couch excessive force claims as violations of their Fourteenth Amendment rights to due process, not infringements on the Eighth Amendment's ban on cruel and unusual punishment.

*Lewis*, 581 F.3d at 473 (internal quotation marks and citations omitted).[4] The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment. *Id.* at 475 (citing *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983)); *see also Wilson*, 83 F.3d at 875. Mr. Forrest has not explained, however, how any protections guaranteed by the Fourteenth Amendment provide him with more protection than he would receive under tradi-

---

[4] In *Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009), the plaintiff had been convicted, but was awaiting sentencing. Thus, his constitutional status, for purposes of his section 1983 excessive force claim, fell somewhere in between pretrial detainee and sentenced prisoner. We held that the Fourteenth Amendment provided the basis for his claim. Mr. Forrest was awaiting arraignment at the time Officer Prine employed the taser. Mr. Forrest therefore falls within the pretrial detainee category and the Fourteenth Amendment serves as the basis for his excessive force claim.

tional Eighth Amendment standards.[5] We therefore shall borrow Eighth Amendment standards to analyze Mr. Forrest's Fourteenth Amendment section 1983 claim. *Cf. Lewis*, 581 F.3d at 475 (refusing to consider, absent the parties' raising the issue, "any safeguards the Fourteenth Amendment provides beyond those it shares with the Eighth Amendment").

"The 'unnecessary and wanton infliction of pain' on a prisoner violates his rights under the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Force used in "a good-faith effort to maintain or restore discipline," does not rise to the level of being unnecessary and wanton. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Only force intended "maliciously and sadistically" to cause harm to the prisoner falls under that standard. *Id.*

> Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force.

*Lewis*, 581 F.3d at 477.

---

[5] Indeed, "the exact contours of any additional safeguards [guaranteed by the Fourteenth Amendment] remain undefined." *Lewis*, 581 F.3d at 474.

**B.**

Mr. Forrest contends that Officer Prine had absolutely no justification for using a taser on him because Mr. Forrest posed no threat. We must conclude that no reasonable jury would agree. *See Anderson*, 477 U.S. at 250-51 (discussing the summary judgment standard). Officer Prine was aware that Mr. Forrest had attacked an officer earlier in the night, necessitating at least one use of the taser to maintain officer safety and public order. Mr. Forrest does not dispute that he appeared to be intoxicated, and, consequently, the officer reasonably could have perceived him as acting unpredictably. The immediate situation facing Officer Prine was indeed a very difficult one. Mr. Forrest was a relatively large man confined in an enclosed space of relatively small area. Facing Officer Prine, he was pacing in the cell, clenching his fists and yelling obscenities. Mr. Forrest was not merely "slow to comply with an order"; his conduct created a situation where the officers were "faced with aggression, disruption, [and] physical threat." *Lewis*, 581 F.3d at 477.[6] Clearly, Mr. Forrest posed an immediate threat to safety and order within the jail. The use of a taser in such circumstances constituted a permissible use

---

[6] In *Lewis*, the plaintiff was struck by an officer's taser while lying in a bed and, according to his version of the facts, without warning. We determined that a genuine issue of material fact existed as to whether the officer's use of force at that moment was intended as a good faith effort to maintain order or was excessive. The facts in Mr. Forrest's case are, of course, not comparable.

of force. *See id.* at 477-78 ("In a jail or prison setting, it is not hard to imagine any number of scenarios that would justify the [use of] . . . taser guns.").[7]

Additionally, before employing the taser, Officer Prine warned Mr. Forrest *several times* that noncompliance would result in tasing. Mr. Forrest did not heed the warnings. *Cf. Kinney v. Ind. Youth Ctr.*, 950 F.2d 462, 466 (7th Cir. 1991) (affirming summary judgment dismissal of the plaintiffs' Eighth Amendment section 1983 claims of excessive force against defendant officer because officer gave the plaintiffs verbal warnings to stop or be shot).

In the course of his argument to us, Mr. Forrest contends that a genuine issue of material fact exists as to whether Officer Prine aimed at Mr. Forrest's eye. Although he claims no specific injury to his eye, Mr. Forrest nevertheless submits that, if Officer Prine did aim the instrument at his eye, such a fact would evince a "malicious and sadistic" intent on Officer Prine's part to cause harm, even if some force was permissible under the

---

[7] Mr. Forrest suggests that Officer Prine should have used the direct contact feature of the taser, as opposed to the gun feature. The record makes clear, however, that Officer Prine reasonably assessed that he could not safely draw sufficiently close to Mr. Forrest to permit such an application of the taser. Nor does the record affirmatively establish that such an application would have resulted in less of a chance of Mr. Forrest falling and sustaining injuries similar in kind to those of which he now complains.

circumstances. *See Hudson*, 503 U.S. at 7. In Mr. Forrest's view, the mere fact that a taser struck near his eye constitutes a "smoking gun" and requires us to infer that Officer Prine intended that the taser strike that location.

First, as a preliminary matter, we think that such an inference is an inexorable consequence of the situation. No reasonable person could accept Mr. Forrest's contention that, because the officer was trained in the use of tasers, the *only* possible reason for the taser hitting his face is that Officer Prine intended that the taser hit his face because he must have hit precisely where he was aiming. There is another very obvious explanation as to why the taser hit Mr. Forrest's face. As we already have noted, the undisputed evidence shows that Mr. Forrest was pacing in an agitated manner when Officer Prine discharged the taser device. No reasonable jury could believe that a police officer, although trained in the use of tasers, always hits precisely his target when the target is moving.

More importantly, *on this record*, it simply would not be permissible for a jury to infer from the mere fact that the taser hit Mr. Forrest's face that Officer Prine maliciously and sadistically intended to cause Mr. Forrest pain. After an examination of the entire record, we conclude *confidently* that the evidence would not sustain a jury verdict premised upon such an inference. As we already have noted, the record reveals that Officer Prine confronted, in close quarters, a defiant, belligerent, intoxicated pretrial detainee. He employed the taser only after he had warned Mr. Forrest to cooperate. This warning

was entirely appropriate under the circumstances and cannot reasonably be construed as evincing a malicious intent. Indeed, the record provides affirmative evidence that Officer Prine was proceeding in a professional manner to accomplish a difficult task in a dangerous situation.

Mr. Forrest maintains, however, that we should infer that Officer Prine was angry and wanted to harm Mr. Forrest because Mr. Forrest had impugned Officer Prine's character with the use of invectives. However, on this record, that theory is wholly speculative, and Mr. Forrest is not entitled to such an unsupported infer-ence. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[I]t is well-settled that speculation may not be used to manufacture a genuine issue of fact." (internal quotation marks omitted)). Unlike in some cases, where the officer's response to the detainee's invectives supports the inference that the officer was angry when he employed the taser, *cf. Orem v. Rephann*, 523 F.3d 442, 446-47 (4th Cir. 2008),[8] there is simply no such evidence in this case.

---

[8] In *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008), an officer employed a taser on the plaintiff and told her to "stop it" and to respect the officer's authority, immediately after the plaintiff had cursed at the officer. Those facts, along with the manner in which the officer used the taser, contributed to the court's conclusion that genuine issues of material fact existed as to whether the officer's "use of the taser gun was wanton, sadistic, and not a good faith effort to restore discipline." *Id.*

Finally, although it is conceivable that Mr. Forrest was speaking literally when he told Officer Prine to get the taser out of his face, such an interpretation does not comport with the evidence before us.[9] The record reveals a chaotic scene in which Mr. Forrest, pacing about in his cell, had no way of knowing precisely where Officer Prine was aiming. Our reading of this part of the record reveals an intoxicated, defiant, angry and belligerent pretrial detainee speaking about the action of an officer holding a taser device 7-10 feet away while the officer attempted to convince him to comply with the prison's intake procedure. Mr. Forrest's characterization of his exclamation in this situation is, at best, the sort of self-serving and uncorroborated testimony by a party that does not create a genuine dispute of fact. Mr. Forrest's "less than definitive knowledge does not cast sufficient doubt on what the officer reasonably believed at the time." *See Valance v. Wisel*, 110 F.3d 1269, 1276 (7th Cir. 1997).

## Conclusion

A reading of the record reveals that Officer Prine's use of the taser was a reasonable, good faith effort to maintain or restore discipline within the jail. There simply is no genuine issue of triable fact as to whether Officer

---

[9] Mr. Forrest's counsel admitted at oral argument that the statement was ambiguous and a reasonable interpretation would be that Mr. Forrest was using mere "street talk" to demand that the taser not be used.

Prine's decision to employ the taser amounted to a viola-
tion of the Due Process Clause of the Fourteenth Amend-
ment. Even taking the evidence in the light most fav-
orable to Mr. Forrest and drawing all *reasonable* infer-
ences therefrom, no reasonable jury would conclude
that Officer Prine fired the taser with a malicious or
sadistic intent.

Accordingly, we affirm the judgment of the district court.

AFFIRMED

8-31-10