NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 30, 2011[*]
Decided December 1, 2011

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

Nos. 09-3646 & 11-2361

| | |
|---|---|
| SONNIEL R. GIDARISINGH, | Appeals from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 04-C-0038 |
| | |
| GARY R. McCAUGHTRY, et al., | Charles N. Clevert, Jr., |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

In this action under 42 U.S.C. § 1983, Sonniel Gidarisingh sued 18 employees of the Wisconsin prison system claiming he was the victim of retaliation and a gratuitous beating inflicted while he was restrained. Following a bench trial, the district court entered judgment for all defendants. The court later denied Gidarisingh's motion for relief from the judgment, *see* FED. R. CIV. P. 60(b). Gidarisingh appeals from both decisions.

---

[*] After examining the briefs and records, we have concluded that oral argument is unnecessary. Thus, the appeals are submitted on the briefs and records. *See* FED. R. APP. P. 34(a)(2)(C).

Gidarisingh was incarcerated at Waupun Correctional Institution in 1998 when a neighboring inmate, Matthew Sanville, committed suicide. Sanville's mother sued a host of prison officials on behalf of his estate; Gidarisingh testified for the estate at trial. During discovery for Sanville's case, Gidarisingh was deposed at Waupun. The morning of his deposition, Gidarisingh, who had been in segregation for almost a year, was released into the general population. Immediately after the deposition, however, he was placed back in segregation. Thus began a series of actions on the part of prison employees—from denied meals to reports of misconduct to cell searches—that Gidarisingh contended were taken in retaliation for his involvement in Sanville's case. The alleged retaliation spanned five years and involved staff at both Waupun and Columbia Correctional Institution, where Gidarisingh was imprisoned between 2002 and 2006. He accused 15 employees—9 guards, the wardens and security directors of both facilities, the education director at Columbia, and the recreation director at Waupun—of retaliation. (He dismissed his claim against the recreation director immediately before trial). He also contended that three guards at Columbia used excessive force during an incident in 2003 when, he alleged, they beat and strip-searched him without any legitimate purpose.

At trial, Gidarisingh, who was represented by counsel, and the defendants presented diametrically opposed accounts of almost every incident at issue. Regarding the retaliation claim, Gidarisingh testified that the defendants made comments that strongly implied a retaliatory motive for their behavior. The defendants denied making those statements, denied knowing of Gidarisingh's involvement in Sanville's case, and offered innocent motives for their actions. All of the defendants testified except for the warden at Waupun and the education director at Columbia; Gidarisingh submitted no evidence that either was involved in the purportedly retaliatory incidents.

Regarding the excessive-force claim, Gidarisingh testified that the confrontation began after guard Kevin Pitzen escorted him from the shower to his cell. Gidarisingh was restrained with handcuffs and leg shackles because of previous "threatening behavior." When Pitzen and Gidarisingh reached the cell, the guard used a flexible tether to secure Gidarisingh's left wrist to the front of the cell while he waited for a second guard, Jeremiah Millard, to help him place Gidarisingh back in his cell. Gidarisingh told the court that a fellow prisoner then called out his name, and he turned his head to respond. Suddenly, he testified, Pitzen rammed him into the wall. Afterward, Pitzen, Millard and guard Tracy Kopfhamer wrestled him to the ground and pummeled him despite his lack of resistance, Gidarisingh told the court. The guards then took him back to the shower area and conducted a strip search. The beating was so severe, Gidarisingh testified, that he thought his collar bone was broken.

Pitzen, on the other hand, testified that Gidarisingh turned his head, defied instructions to face forward, tensed his arm muscles, and said, "I'll face any way I want to, man." Pitzen testified that he feared for his safety and then "directed" Gidarisingh into the wall. Millard and Kopfhamer told the court that they witnessed the struggle and assisted Pitzen in bringing Gidarisingh to the ground. The guards explained that, despite his restraints, Gidarisingh posed a threat because he still was capable of kneeing, elbowing, kicking, biting, or spitting at them, and added that a strip search is standard procedure for inmates who fight with guards. The guards also denied punching or beating Gidarisingh once they had subdued him. A nurse who examined Gidarisingh after the confrontation testified that he treated Gidarisingh for superficial scrapes and cuts on his shoulder, chest, and ankle.

In ruling for the defendants, the district court deemed credible the defendants who testified and adopted their version of events. Regarding the retaliation claim, the court found that the defendants did not know of Gidarisingh's involvement in Sanville's case and thus concluded that they did not retaliate against him. Regarding the excessive-force claim, the judge credited Pitzen's contention that he felt Gidarisingh's arm tense and therefore perceived a threat from him. He also found that the guards took Gidarisingh to the showers right after they subdued him, thus rejecting Gidarisingh's assertion that the guards pummeled him after he was on the ground, and credited the nurse's testimony that Gidarisingh suffered only minor injuries. Considering all these factors, the judge concluded that the guards' use of force was not excessive. Gidarisingh filed the first of these appeals, and after we docketed that case, he moved to vacate the judgment under Rule 60(b). Gidarisingh, by now pro se, claimed to have evidence that the defendants perjured themselves and committed a fraud on the court. When the district court denied this motion, Gidarisingh appealed from that decision, too.

Gidarisingh principally contends that the evidence presented at trial does not support the district court's judgment. The defendants do not address the merits of this argument; they argue only that Gidarisingh failed to preserve it by not filing a motion for judgment as a matter of law, *see* FED. R. CIV. P. 50. But as Gidarisingh notes, Rule 50 applies only to jury trials. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1078 n.3 (10th Cir. 2009); *Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007); *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004). Under Rule 52, which governs bench trials, a party need not file a motion questioning the evidentiary support underlying the district court's findings to preserve the issue for appeal. *See* FED. R. CIV. P. 52(a)(5); *Schaub v. VonWald*, 638 F.3d 905, 924 (8th Cir. 2011); *Fed. Ins. Co.*, 480 F.3d at 32. So we proceed to the merits of Gidarisingh's argument, reviewing the district court's factual findings and application of law to fact for clear error and its legal conclusions de novo. *See* FED. R. CIV. P. 52(a)(6); *Kelley v. Chi. Park Dist.*, 635 F.3d 290, 295 (7th Cir. 2011); *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006).

Gidarisingh first contends that the evidence at trial does not support the district court's conclusion that he did not suffer retaliation for his involvement in Sanville's case. But the judge rested his ruling largely on his finding that the testifying defendants were credible, and Gidarisingh has given us no reason to disturb this finding, which is not clearly erroneous. *See* FED R. CIV. P. 52(a)(6); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). As for the two defendants who did not testify, Gidarisingh never introduced any evidence of their direct involvement in the alleged retaliation, and we cannot understand how the claims against them survived summary judgment.

Gidarisingh also challenges the factual foundation of the district court's ruling on his excessive-force claim, but, again, he identifies only credibility disputes that the judge was entitled to resolve in favor of the defendants. In the alternative, Gidarisingh appears to argue that any force used against a prisoner in restraints is necessarily excessive. But that is not the law; rather, force is excessive only when it is applied "maliciously and sadistically to cause harm" instead of "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010). A finder of fact should weigh considerations including the extent of the prisoner's injuries and the threat posed to staff in making that assessment. *See Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010); *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009). Here, given the court's finding that Gidarisingh's injuries were minor, its finding that Pitzen felt Gidarisingh's arm tense, its rejection of Gidarisingh's assertion that the guards beat him after he was subdued, and the testimony that even bound prisoners can endanger guards, the district court did not err in concluding that the guards' use of force was not excessive.

Gidarisingh's challenge to the denial of his motion under Rule 60(b) merits little discussion. Rule 60(b) allows for relief from judgment only in extraordinary situations, *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 493–94 (7th Cir. 2011), and Gidarisingh points to nothing in the record that would justify such extraordinary relief.

We have reviewed Gidarisingh's remaining arguments, but none of them merits discussion. The judgments of the district court are **AFFIRMED**.