NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 22, 2012[*]
Decided March 7, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

Nos. 11-2050 & 11-2051

| | |
|---|---|
| ARQUINCY LEE CARR, | Appeals from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | Nos. 10-C-997 & 10-CV-1017 |
| | |
| DAVID BETH, et al., | Aaron E. Goodstein, |
| *Defendants-Appellees.* | *Magistrate Judge* |

### O R D E R

Arquincy Carr, a Wisconsin inmate serving 114 months in prison for battery, strangulation, and witness intimidation, brought two suits under 42 U.S.C. § 1983 claiming that jailers in Kenosha County violated his rights under the Fourteenth Amendment while he was a pretrial detainee. A magistrate judge, presiding with Carr's consent, *see* 28 U.S.C. § 636(c)(1), screened and dismissed both complaints with prejudice for failure to state a claim, *see id*. § 1915A(b)(1). We have consolidated Carr's appeals.

---

[*] The defendants were not served with process in the district court and are not participating in these appeals. After examining the appellant's briefs and the records, we have concluded that oral argument is unnecessary. Thus, the appeals are submitted on the appellant's briefs and the records. *See* FED. R. APP. P. 34(a)(2)(C).

Since Carr's complaints were dismissed at the pleading stage, we assume for analysis that his allegations are true. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011). Carr's first complaint (appeal no. 11-2050) recounts a series of minor altercations with jail employees. A few examples are characteristic. On one occasion he landed in segregation after he flooded a holding cell (apparently by clogging the sink or toilet) in protest of a guard's verbal abuse. A few weeks later, after Carr had ignored a guard's directive to end a phone call, she "grabbed his upper arm very roughly and squeezed it" while taking him to his cell. The next day Carr again flooded his cell, this time because he was not allowed to use the telephone. The guards who cleaned up the mess stripped Carr's cell of bedding and hygiene supplies and did not give them back for two days. Another time Carr returned from a session with his therapist to find his mattress overturned and a legal envelope torn. Four days later a guard pushed him in the chest as he tried walking out of his cell after the door had been opened inadvertently.

In his second complaint (appeal no. 11-2051), Carr recounts two physical altercations with guards. The first came after Carr grudgingly accepted an opportunity to shower on the condition that he wear handcuffs and a restraint around his waist. He fell in the shower, and at the same time the drain had become clogged—coincidentally, Carr says—from debris, soap, and soap wrappers. Carr announced that he could not shut off the water because he injured an arm and shoulder, and so Nicole Cheney, the attending guard, told Carr to exit the shower stall but leave the water running. Meanwhile, guard Duane Corso entered the room and began "lecturing" Carr about the running faucet and growing flood. When Carr replied that Cheney had told him to let the water run, Corso yanked him out of the shower by his lame arm, almost causing him to fall again. Cheney and Corso then escorted Carr back to his cell, where they were joined by two other guards. After entering the cell, Cheney pulled on the waist restraint and kicked Carr in the leg, knee, and side, causing tremendous pain, while Corso continuously twisted his arm. Carr told them to stop and lunged at Cheney when they did not. Corso shouted at her to spray Carr with pepper spray, which she did. Carr choked and was blinded by the chemical burning his eyes and face.

The second incident involved guard Jeremy May, who stood outside Carr's cell and told him to relinquish a pen. Instead of complying, Carr said, "I'll think about it." May went away momentarily but returned and pointed a canister of pepper spray at Carr through the meal slot. By then Carr had kicked the pen under the door and out of his cell, but May demanded his sheet and blanket. Carr responded by throwing "everything" at the door. May told him to turn around, and when Carr refused, May gathered reinforcements, including Steve Rae and "Corporal Honey." The guards told Carr to extend his hands through the meal slot, and when he did, May roughly pulled on them, causing his arms to scrape against the top of the slot. May ignored Carr's demand to stop pulling. May tried to open the cell door, but Carr held it shut. Another guard eventually slammed the door of the

meal slot on Carr's finger, stunning him long enough for Rae to spray him with pepper spray. Carr surrendered and was taken to a "sally port," where May sprayed his face with water from a hose, preventing him from breathing. The incident caused cuts and bruises.

The magistrate judge construed Carr's first complaint as alleging that the defendants violated his rights under the Fourteenth Amendment by placing him in administrative segregation without due process of law, searching his cell and temporarily removing some items, and using force he describes as excessive. In dismissing the action, the magistrate judge concluded that, even by Carr's account, the defendants were justified in holding Carr in segregation to prevent him from creating further safety hazards by flooding his cell in the general population. Moreover, the court reasoned, the search of Carr's cell and the temporary confiscation of his property did not violate his right to due process, and his recitation describes uses of force that were necessary to maintain order. The magistrate judge construed Carr's second complaint as again alleging that the defendants used unconstitutionally excessive force, and again the court dismissed this complaint on the understanding that the force used against Carr was not malicious or sadistic, but justified by the need to maintain order.

In appealing the dismissal of his first complaint, Carr does not challenge the magistrate judge's conclusions or develop a legal argument. *See* FED. R. APP. P. 28(a)(9)(A); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Aside from noting the magistrate judge's disposition and making the broad assertion that the court "seemed not to show concern for plaintiff's pro se status," Carr in his brief merely repeats the factual allegations and legal conclusions included in his complaint—and adds some more not included in his complaint. What is missing is argument about why the magistrate judge purportedly erred in dismissing Carr's claims for failure to state a claim. Although we construe pro se briefs liberally, we will not craft litigants' arguments for them. *See Anderson*, 241 F.3d at 545–46. The first appeal is thus dismissed.

Carr's brief in his second appeal is not much better, but at least he breaks up his presentation into what appears to be a "facts" section and an "argument" section, which makes it easier to discern how he thinks the magistrate judge erred. We understand him to be arguing that the magistrate judge erred in concluding that guards Cheney, Corso, May, and Rae did not act to punish him. (Carr's brief also mentions Corporal Honey, but Honey is not a named defendant.) Carr argues that he posed no threat to anyone when Corso yanked his arm in the shower and afterward twisted his arm in his cell, or when Cheney kicked him in the leg and side and sprayed him with pepper spray, so their use of force was malicious and thus excessive. Carr further contends that he was complying with May's commands when May pulled his hands through the meal slot, when Rae sprayed him with pepper spray, and when May sprayed him with the hose.

We agree with Carr that his complaint states a claim against Cheney and Corso for excessive force. The Fourteenth Amendment right to due process affords pretrial detainees at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment. *See Smith v. Knox Cnty. Jail,* No. 10-1113, slip op. at 3 (7th Cir. Jan. 23, 2012); *Miller v. Dobier,* 634 F.3d 412, 414–15 (7th Cir. 2011); *Forrest v. Prine,* 620 F.3d 739, 744 (7th Cir. 2010). When jailers are accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992); *see Santiago v. Walls,* 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson,* 503 U.S. at 7; *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004). Here, Carr alleges that Corso entered the shower room and yanked his arm, and then needlessly twisted his arms while telling Cheney to spray him with pepper spray while he was in restraints. And Cheney did spray him, and also kicked him in the leg and side for no reason, or so we must assume at this stage. It may be that Carr's allegations are untrue, or that he's omitted other pertinent facts that would explain the need and reasonableness of the force that was used. But with nothing more, we cannot infer that these actions were taken in a good-faith effort to maintain and restore discipline. And the allegations, construed in Carr's favor, are severe enough that they rise above de minimis contact that is not sadistic or malicious. *See Wilkins v. Gaddy,* 130 S. Ct. 1175, 1178–79 (2010); *Hendrickson v. Cooper,* 589 F.3d 887, 891 (7th Cir. 2009); *Williams v. Curtin,* 631 F.3d 380, 384 (6th Cir. 2011); *Martinez v. Stanford,* 323 F.3d 1178, 1180, 1184 n.2 (9th Cir. 2003); *United States v. Walsh,* 194 F.3d 37, 41–42, 50 (9th Cir. 1999).

But we reach a different conclusion for one of the claims against May and the claim against Rae. According to his complaint, Carr had refused May's commands to relinquish the pen and turn around in his cell before May pulled Carr's hand through the meal slot. Carr also had refused to open his cell door before Rae sprayed him with pepper spray. Even if these allegations are true, a finder of fact could not reasonably infer from the guards' actions that their motive was anything more than a need to restore discipline: By his own admission, Carr was disobeying the guards' orders. *See Santiago,* 599 F.3d at 757. One claim, though, still stands against May. Carr alleges that May suffocated him with water from a hose after the guards had succeeded in removing him from his cell and moving him to the "sally port." Because it is unclear from the complaint whether Carr was complying with the guards' commands at that point, and we must construe the facts in his favor, we cannot infer that May was acting to restore discipline. Thus, we conclude that the magistrate judge properly dismissed the claims against May and Rae regarding the altercation in the cell, but improperly dismissed the claim against May regarding the altercation in the sally port.

We have reviewed Carr's other contentions, and none has merit. Given that Carr has not alleged that any of the other six defendants named in his second complaint were personally involved in the use of force against him, the magistrate judge properly dismissed the complaint as against them. *See Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006); *Palmer v. Marion County,* 327 F.3d 588, 593–94 (7th Cir. 2003).

Appeal no. 11-2050 is **DISMISSED**. For that litigation Carr has incurred two "strikes" under 28 U.S.C. § 1915(g), one for filing a complaint that fails to state a claim and a second for appealing the dismissal. *See Hains v. Washington,* 131 F.3d 1248, 1250 (7th Cir. 1997).

The judgment in appeal no. 11-2051 is **VACATED** in part and, as to defendants Cheney, Corso, May, and Rae, the case is **REMANDED** for further proceedings consistent with this order. In all other respects that judgment is **AFFIRMED**. And given this outcome, Carr has not incurred a strike for that litigation. *See Turley v. Gaetz,* 625 F.3d 1005, 1012 (7th Cir. 2010).