NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 5, 2012[*]
Decided November 5, 2012

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1655

| | |
|---|---|
| TRAVIS JAMES HUSNIK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-C-0781 |
| CORPORAL ENGLES, et al., | Charles N. Clevert, Jr., |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Travis Husnik, a former pretrial detainee at the Brown County Jail in Wisconsin, appeals the grant of summary judgment against him in this excessive-force action under 42 U.S.C. § 1983, asserting that several police officers at the jail needlessly used a taser to subdue him as he violently resisted their efforts to take him to his cell. Because the use of a taser did not violate Husnik's constitutional rights, we affirm.

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

The facts of this case are undisputed.[1] Following a court appearance, Husnik became violent with law-enforcement officers. At the courthouse, he verbally abused a court commissioner and kicked one of the transport deputies in the chest as they removed him from court to take him back to Brown County Jail, where he was a pretrial detainee. Then, at the jail, when officers told him they would return him to his cell, he shouted "F-ck you, we're going to fight." Despite being cuffed and in leg irons, he managed to slam one of the officers into a wall as the officer attempted to get him under control. Husnik fell to the ground with the officer and, when backup arrived, was restrained by several others. Concerned that Husnik might be bleeding from his mouth (and might therefore attempt to spit blood at them), the officers placed a spit hood over him. When he chewed through the first hood, a second one was put in place.

The officers brought out a restraint chair to transport him to his cell. Although Husnik continued to struggle, they successfully got him into the chair. They removed his cuffs, strapped each of his wrists to the chair's arms, and strapped his ankles to the chair's legs. One guard asked Husnik if he was injured; Husnik told him not to worry. Another guard noticed that they had strapped in Husnik's ankles without first removing his leg irons, and that the leg restraints would therefore have to be adjusted before he could be safely transported. Husnik's socks would also have to be removed to monitor the blood circulation in his feet and to ensure that he could not work his legs free of the restraints.

Husnik refused to cooperate with the removal of his socks and thrashed his legs back and forth. Corporal Leyendecker handed a taser, a device that generates an electrical shock that can immobilize a person, to Officer Nies. Nies showed Husnik the device and warned him that he would use it if Husnik did not allow the officers to adjust his restraints. Husnik responded "Go ahead, I don't f--king care." Nies warned him again, and when Husnik continued to thrash his legs, Nies discharged the device into Husnik's leg.

Yet Husnik continued to struggle, boasting that the taser "ain't sh-t." He freed his left arm from the restraints and began to swing it at the officers. Several officers attempted to re-secure the arm, but were unable to do so. Leyendecker warned Husnik to put his arm back into the wrist strap or he would be tased again. Husnik swore at Leyendecker and continued to swipe at the officers. Leyendecker then tased Husnik's abdomen for five

---

[1] The defendants attached a set of proposed facts to their motion for summary judgment, along with a notice warning Husnik that if he did not challenge those proposed facts, the district court would be free to accept them as undisputed. *See Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992). Husnik did not challenge the proposed facts, so the district court concluded that the facts were not contested for purposes of summary judgment. Likewise, he does not challenge them on appeal.

seconds. This time, Husnik stopped resisting. The other officers were then able to re-secure Husnik's arm.

Husnik sued, alleging in his sworn complaint that the electrical shocks were excessive force and had caused him to experience significant pain in his abdomen. The district court granted summary judgment for the defendants. The court acknowledged that as a pretrial detainee, the protections of the Fourteenth Amendment applied to Husnik. But the court observed that the contours of the Fourteenth Amendment's protections for pretrial detainees remain undefined, and so decided to analyze Husnik's excessive-force claim as if it was brought under the Eighth Amendment, where malicious intent is required. The court concluded that no rational factfinder could conclude that the defendants maliciously intended to harm Husnik. Instead the court determined the officers tasered Husnik in a good-faith effort to restore discipline.

Husnik appeals, arguing that the due process protections offered to pretrial detainees, at a minimum, prohibit jailors from using tasers against a detainee who is in restraints and therefore does not pose an immediate danger. It is true that "[t]he Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment," *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010); *see also Bell v. Wolfish*, 441 U.S. 520, 537 (1979); *Lewis v. Downey*, 581 F.3d 467, 473–74 (7th Cir. 2009). The central concern of that due process right is to ensure that the accused are not subjected to "excessive force that amounts to punishment," *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). But not every use of force is a punishment: "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537.

We agree with the district court's conclusion that the facts unmistakably show that the taser was reasonably used to bring Husnik under control in a manner that would avoid any further harm to the officers and not as a punishment. Leyendecker and Nies used the tasers after repeatedly warning Husnik to cease his unrelenting aggression. Husnik appears to argue that, before tasing him, the officers had an obligation to step back and wait to see if he would become less belligerent. But we are hesitant to micromanage a jail's intake procedures. *See Block v. Rutherford*, 468 U.S. 576, 584–85 (1984); *Bell*, 441 U.S. at 544; *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1998). In any event, because Husnik had freed his arm from the restraints, he posed an imminent threat to the officers's safety; waiting and hoping for him to relax was not an option. *Forrest*, 620 F.3d at 745–46 (concluding that officer's use of force was reasonable where detainee threatened aggression, disruption, and physical attack). Thus even under the standard that Husnik proposes—tasing is unreasonable unless needed to quell immediate danger—the use of force here was not excessive.

AFFIRMED.