In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3639

MICHAEL B. KINGSLEY,

*Plaintiff-Appellant*,

*v.*

STAN HENDRICKSON, ET AL.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:10-cv-00832-bbc — **Barbara B. Crabb**, *Judge*.

ARGUED APRIL 23, 2013 — DECIDED MARCH 3, 2014

Before RIPPLE and HAMILTON, *Circuit Judges*, and
STADTMUELLER, *District Judge*.[*]

RIPPLE, *Circuit Judge.* Michael Kingsley brought this action
under 42 U.S.C. § 1983 against six staff members of a
Wisconsin county jail, where he had been held as a pretrial
detainee in 2010. Mr. Kingsley alleged that during his forcible

_____

[*] The Honorable J.P. Stadtmueller, United States District Court for the
Eastern District of Wisconsin, sitting by designation.

transfer to a new cell, which included the application of a taser, the defendants had violated various of his constitutional and statutory rights. The district court granted partial summary judgment for the defendants; a single claim of excessive force against Sgt. Stan Hendrickson and Deputy Fritz Degner proceeded to trial. The jury returned a verdict for the defendants.

Mr. Kingsley now appeals the judgment entered on the verdict, contending that the jury received erroneous and confusing instructions. Specifically, Mr. Kingsley contends that the district court conflated the standards for excessive force under the Eighth and Fourteenth Amendments and, as a result, wrongly instructed the jury to consider the subjective intent of the defendants. Mr. Kingsley also contends that the instructions misstated the harm that he must prove to obtain relief. We hold that the instructions were not an erroneous or confusing statement of the law of this circuit and that Mr. Kingsley affirmatively acquiesced to the instruction dealing with harm. Accordingly, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

In April 2010, Mr. Kingsley was booked into the Monroe County Jail in Sparta, Wisconsin, as a pretrial detainee. On May 1, he was transferred to the facility's south cell block.

On May 20, 2010, a deputy performing a cell check noticed a sheet of yellow legal paper covering the light above Mr. Kingsley's bed and ordered him to take it down. Mr. Kingsley refused the order and answered that he had not put the paper there.[1] The deputy moved on. When he returned for a further cell check later in the evening, he noticed that the paper had not been removed and again ordered Mr. Kingsley to take it down. After another refusal and a warning of possible disciplinary action, the deputy issued him a minor violation and reported it to Sgt. Hendrickson. Sgt. Hendrickson informed Deputy Karl Blanton that Mr. Kingsley would have to remove the paper in the morning.

When Deputy Blanton made his morning rounds, he ordered Mr. Kingsley to take down the paper. Mr. Kingsley did not respond and did not remove the paper. A few minutes later, Sgt. Hendrickson came to deliver Mr. Kingsley's medication, and he again ordered Mr. Kingsley to take down the paper. After several requests, Mr. Kingsley again refused, stating once again that he had not put the paper there. Sgt. Hendrickson next called the jail administrator, Lieutenant Robert Conroy.

Lt. Conroy then went to Mr. Kingsley's cell. After Mr. Kingsley refused his order, Lt. Conroy said jail staff would take the paper down and would have to transfer Mr. Kingsley to another cell in the interim. He also threatened discipline.

---

[1] Apparently, covering the lights with paper is a common practice by inmates in an effort to dim some of the brightness of the jail's lights.

A few minutes later, Sgt. Hendrickson, Deputy Blanton, Lt. Conroy, Deputy Fritz Degner and Deputy Sheriff Shisler arrived at the cell. They ordered Mr. Kingsley to stand up and to back up to the door with his hands behind his back. Mr. Kingsley asked why and protested that he had done nothing wrong. Deputy Degner told Mr. Kingsley to follow the order or he would be tasered. He was again ordered to get up, but he continued to lie facedown on his bunk. He did, however, put his hands behind his back.

At this point, Sgt. Hendrickson and Deputy Blanton entered the cell, and, with some difficulty (which they attribute to Mr. Kingsley "tensing" his arms and holding them apart),[2] they were able to handcuff him. Mr. Kingsley would not follow an order to stand, so they pulled him to his feet. Mr. Kingsley then fell to his knees; he claimed that, in pulling him off of the bed, the officers had smacked his feet on the bedframe, causing him pain. He claimed that the pain was so severe that he could not stand or walk. The officer therefore carried him out of the cell by holding him under his arms and placed him facedown in the hallway. When he would not answer questions about his foot injury, he was taken in the same manner to a receiving cell and placed facedown on the bunk.

Once he was on the receiving-cell bunk, the officers attempted to remove the handcuffs. The evidence at trial was conflicting on the later course of events.[3] The defendants say

---

[2]  R.27 at 7.

[3]  The record contains several videos, including one of the transfer and one

(continued...)

that Mr. Kingsley resisted their effort, pulling the handcuffs apart and trying to get up. Mr. Kingsley denied this resistance at trial. At some point, Sgt. Hendrickson put his knee in Mr. Kingsley's back, and Mr. Kingsley told him, in colorful language, to get off him. Mr. Kingsley claims that the defendants then smashed his head into the concrete bunk, an allegation the defendants deny.

After some further verbal exchange,[4] Deputy Degner applied a taser for five seconds on Mr. Kingsley's back. Lt. Conroy then ordered all of the staff to clear the cell. Fifteen minutes later, the staff returned and were able to remove the handcuffs. Mr. Kingsley was placed on a medical watch, but refused the attention of a nurse.[5]

---

[3] (...continued)
of the incident in the receiving cell. However, the district court found them of limited value on the disputed points because the camera angle is such that Mr. Kingsley is nearly entirely blocked by the defendants.

[4] Mr. Kingsley claims Sgt. Hendrickson ordered Deputy Degner to "[t]ase his ass." R.157 at 52. The defendants deny that these words were used but agree that Sgt. Hendrickson told Deputy Degner to apply the taser in contact stun mode to Mr. Kingsley.

[5] Following the incident, Mr. Kingsley was given a major violation report showing four rule violations. The events surrounding the issuance of that report and the consequences were a part of Mr. Kingsley's procedural due process claim, which is not at issue in this appeal.

**B.**

In December 2010, Mr. Kingsley, proceeding pro se, brought this action in the district court. His principal theory was that the defendants had violated his due process rights under the Fourteenth Amendment.[6] His initial complaint presented several claims against seven Monroe County defendants, including an excessive force claim relating only to Sgt. Hendrickson and Deputy Degner.

The parties cross-moved for summary judgment. The district court granted partial judgment for the defendants on a procedural due process claim relating to Mr. Kingsley's discipline by jail staff. It concluded, however, that material issues of fact remained that precluded judgment on the excessive force claim based on the officers' conduct in the receiving cell. Specifically, the court identified "a dispute about whether defendants slammed plaintiff's head into the concrete bed and used a taser against him solely for the purpose of causing him harm."[7] Although the officers clearly had difficulty removing the handcuffs, Mr. Kingsley claims that it was because they had been applied too tightly and Sgt. Hendrickson's kneeling on his back had caused his body to tense; the officers claim that Mr. Kingsley was resisting. The court observed that, from the video, "it is not clear … whether

---

[6]  He brought the federal claims under 42 U.S.C. § 1983. A state law claim for assault and battery initially was presented as well. That claim is not at issue in this appeal.

[7]  R.69 at 12.

plaintiff was resisting or struggling. [He] does not appear to be moving his body around aggressively or very much at all."[8]

The court noted the case law that held that it was reasonable to use force against an inmate who refused to comply with orders but concluded that the issue in the case was "whether [the] defendants' response to plaintiff's obstinance was *reasonable under the circumstances* or whether it was excessive and was intended to cause [the] plaintiff harm."[9] The court also concluded that, because a jury could find that the defendants had acted with malice, qualified immunity was not available. Although the court, in its ruling, concluded that the relevant constitutional right was contained within the Fourteenth Amendment because of Mr. Kingsley's status as a pretrial detainee, the court applied Eighth Amendment excessive force standards in assessing the claim.

Following the grant of summary judgment, the parties stipulated to the dismissal with prejudice of all outstanding claims except the excessive force claim against Sgt. Hendrickson and Deputy Degner. Counsel was appointed for Mr. Kingsley and the case proceeded to trial. In pretrial proceedings, the district court proposed an instruction on excessive force to which both parties objected, and the court made various modifications. At the close of the evidence, the parties revisited the instruction and again objected to its content. Again, the district court made some modification and

---

[8] *Id.* at 7.

[9] *Id.* at 14 (emphasis added).

added a clarifying instruction. The court finally settled on the following instruction:

> Excessive force means force applied recklessly that is unreasonable in light of the facts and circumstances of the time. Thus, to succeed on his claim of excessive use of force, plaintiff must prove each of the following factors by a preponderance of the evidence:
>
> (1) Defendants used force on plaintiff;
>
> (2) Defendants' use of force was unreasonable in light of the facts and circumstances at the time;
>
> (3) Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and
>
> (4) Defendants' conduct caused some harm to plaintiff.
>
> In deciding whether one or more defendants used "unreasonable" force against plaintiff, you must consider whether it was unreasonable from the perspective of a reasonable officer facing the same circumstances that defendants faced. You must make this decision based on what defendants knew at the time of the incident, not based on what you know now.
>
> Also, in deciding whether one or more defendants used unreasonable force and acted with reckless

disregard of plaintiff's rights, you may consider such factors as:

- The need to use force;

- The relationship between the need to use force and the amount of force used;

- The extent of plaintiff's injury;

- Whether defendants reasonably believed there was a threat to the safety of staff or prisoners; and

- Any efforts made by defendants to limit the amount of force used.[10]

Mr. Kingsley's counsel objected to the inclusion of "harm" as an element of an excessive force claim. He contended that the jury might confuse the element of harm for some sort of lasting or significant injury. Counsel first requested a clarifying instruction that "pain is considered harm."[11] When the court began to offer a preferred alternative, "[A] person can be harmed even if he does not suffer a lasting injury or …," plaintiff's counsel interjected, "Or severe injury."[12] Following this exchange, the jury was instructed that "[a] person can be harmed even if he did not suffer a severe injury."[13]

---

[10] R.146 at 3–4.

[11] R.156 at 79.

[12] *Id.* (internal quotation marks omitted).

[13] R.146 at 4.

The jury returned a verdict for the defendants, and the district court entered judgment dismissing the case. Mr. Kingsley timely appeals the judgment. He submits that the instruction misstated the law and confused the jury on the subjects of both the intent and harm necessary to establish an excessive force claim in the pretrial detainee context.

## II

## DISCUSSION

On appeal, Mr. Kingsley raises two challenges to the jury instructions. First, he claims that the instruction wrongfully conflated the standard for excessive force claims under the Eighth and Fourteenth Amendments and that, as a result, the instructions incorrectly required him to demonstrate that the defendants acted with reckless disregard for his safety. Second, Mr. Kingsley claims that the instruction regarding harm, which stated that harm was an element of the claim and that it could be demonstrated without a showing of "severe injury," was both incorrect and confusing.

We shall assess each of his objections to the instructions in turn. Our review of jury instructions is de novo. *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). We must "determine whether, taken as a whole, [the instructions] correctly and completely informed the jury of the applicable law." *Id.* "We defer to the district court's phrasing of an instruction that accurately states the law; however, we shall reverse when the instructions misstate the law or fail to convey the relevant legal principles in full and when those shortcomings confuse or

mislead the jury and prejudice the objecting litigant." *Id.*
(citation omitted) (internal quotation marks omitted).

## A.

### 1.

A claim of excessive force, like the one at issue here, is, at
bottom, one that seeks to impose liability for "physically
abusive governmental conduct." *Graham v. Connor*, 490 U.S.
386, 394 (1989). The right to be free from such abuse derives
from various provisions of the Bill of Rights. The Fourth
Amendment affords protection to the person in the context of
a seizure, *id.*; the Eighth Amendment applies when, following
the constitutional guarantees of our criminal process, there has
been an adjudication of guilt and an imposition of sentence,
*Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Between the
status of arrestee and sentenced prisoner is the intermediate
status of the detainee, who similarly is entitled to protection
from physically abusive government conduct. The
constitutional source of that protection lies in the right to be
free from deprivations of liberty without due process of law.
*Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979).

In sum, we evaluate a claim of excessive force not under
"some generalized 'excessive force' standard," but "by
reference to the specific constitutional standard which governs
that right." *Graham*, 490 U.S. at 394. Mr. Kingsley was a pretrial
detainee at the time of the tasing incident; therefore, the
Fourteenth Amendment's Due Process Clause is the source of
his substantive right and determines the applicable standards

to evaluate his claim. *See Ingraham*, 430 U.S. at 672 n.40; *Forrest v. Prine*, 620 F.3d 739, 743–44 (7th Cir. 2010).

**2.**

In examining the contours of the right to be free from excessive force *as an element of due process*, *Bell v. Wolfish*, 441 U.S. 520 (1979), is our primary touchstone. There, the Supreme Court evaluated a claim regarding the conditions of confinement for pretrial detainees. "[U]nder the Due Process Clause, a detainee *may not be punished* prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535 (emphasis added). As a consequence, "the proper inquiry" is whether the treatment of the detainee "amount[s] to punishment." *Id.* The Supreme Court markedly contrasted due process protections for detainees against the rights of sentenced inmates: "A sentenced inmate[] … *may be punished*, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Id.* at 535 n.16 (emphasis added).

Our cases also have noted that the protection afforded by the Due Process Clause is broader than that afforded under the Eighth Amendment. *See Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009) ("[T]he Due Process Clause, which prohibits all 'punishment,' affords broader protection than the Eighth Amendment's protection against only punishment that is 'cruel and unusual.'"); *id.* at 475 (noting that, in the excessive force context, "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment"); *cf. Forrest*, 620 F.3d at 743–44 (acknowledging that "[t]he Fourteenth

Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment"). Of course, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537.[14] We must ask whether a particular action was taken "for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538.[15]

Notably, the Due Process Clause provides its own limiting principle; the Clause protects against only abusive conduct that is more than negligence, *Daniels v. Williams*, 474 U.S. 327, 334 (1986), or even gross negligence, *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc). Indeed, we have said that the official conduct must be at least reckless. *See Archie*, 847 F.2d at 1219–20. Recklessness, which necessarily incorporates some measure of subjective intent, stands in contrast to the rule under the Fourth Amendment that focuses only on whether the government conduct was "*objectively*

---

[14]   As we already have noted, *Bell v. Wolfish*, 441 U.S. 520 (1979), was a conditions of confinement case, not a case concerning excessive force, and the Supreme Court has not applied its rule directly in the excessive force context. However, in *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), the Court noted that *Bell* made clear the right of a detainee to be free from excessive force under the Due Process Clause.

[15]   The Supreme Court has noted, at least in the context of the Eighth Amendment, that "punishment" itself requires "'a deliberate act intended to chastise or deter.'" *Wilson v. Seiter*, 501 U.S. 294, 300 (1991) (quoting *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985)).

reasonable" in light of all of the facts and circumstances. *Graham*, 490 U.S. at 397 (emphasis added) (internal quotation marks omitted); *see also Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011).

While these cases make clear the basic theoretical and doctrinal distinction among the constitutional standards governing the various categories of confinement, they do not provide a practical framework for distinguishing the obligations of those constrained by each of the constitutional provisions. Indeed, on more than one occasion, while noting the distinction between pretrial and posttrial incarceration, we have decided the case before us by employing the more familiar Eighth Amendment standard. *See, e.g., Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) ("[C]ourts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners, and the Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees." (citations omitted)); *Forrest*, 620 F.3d at 744 (affirming summary judgment for the defendant officers where the plaintiff detainee had "not explained[] … how any protections guaranteed by the Fourteenth Amendment provide him with more protection than he would receive under traditional Eighth Amendment standards"); *Lewis*, 581 F.3d at 474 (reversing summary judgment for officer in Fourteenth Amendment case upon concluding that the plaintiff had raised

a genuine issue of fact even when considered under the more stringent standard set by the Eighth Amendment).

Here, we also have no need to delineate, in any comprehensive fashion, the differences between the rights of pretrial detainees and adjudicated criminals. Our task is less ambitious. We must determine the adequacy of an instruction given to a jury tasked with determining whether excessive force was employed against a pretrial detainee. We simply must determine whether the instruction at issue was sufficiently precise in its description of the due process right of a pretrial detainee to ensure that Mr. Kingsley's case was fairly presented to the jury.

Several of our cases have explored the problem of describing, in the due process context, the right of a detainee to be free from excessive force. In *Titran v. Ackman*, 893 F.2d 145 (7th Cir. 1990), we expressed concern about defining a detainee's due process right to be free from excessive force by use of highly subjective terms such as "grossly disproportionate" or "shocks the conscience." *Id.* at 147 (internal quotation marks omitted). We pointed out that, in the usual course of events, "the propriety of using force on a person in custody pending trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them." *Id.* This emphasis on the objective standard of a reasonable prison officer was written, of course, against the background of the amorphous "shocks the conscience" standard. *See id.* at 147–48. Notably, however, while giving us the objective criteria borrowed from the Fourth Amendment as a more concrete touchstone against which to measure the

conduct of government officials, the court in *Titran* also pointedly remarked that, because "the Due Process Clause does not proscribe negligence or even gross negligence, the search for 'punishment' *cannot be wholly objective*." *Id.* at 147 (emphasis added).

*Wilson v. Williams*, 83 F.3d 870 (7th Cir. 1996), a case that came to us posttrial and that involved the correctness of the jury instructions, afforded us an occasion to focus more directly on the requisite intent for a due process violation based on excessive force. The jury was instructed that the plaintiff must establish that there was a "use of force that was clearly excessive to the need[,] … the excessiveness of which was … objectively unreasonable in light of the facts and circumstances at the time." *Id.* at 873. The jury was further instructed that the plaintiff must establish that the defendant "acted deliberately or with callous indifference, evidenced by an actual intent to violate plaintiff's constitutional rights or reckless disregard for his rights." *Id.*

In *Wilson*, the plaintiff had objected that the instruction wrongfully excluded the officer's subjective intent from the jury's consideration. We perceived no error in this regard. We stated that, where the issue of intent is contested, "a jury may properly rely on objective factors to arrive at their determination of that intent." *Id.* at 876. Notably, we also reaffirmed the pointed holdings of *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988), and *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1094 (7th Cir. 1986), that a plaintiff must prove that the defendants "acted deliberately or with callous indifference, evidenced by an actual intent to violate

[the plaintiff's] rights or reckless disregard for his rights." *Wilson*, 83 F.3d at 875 (internal quotation marks omitted).

Again in *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650 (7th Cir. 2012), when we confronted a situation analogous in many relevant respects to the situation before us today (jail guards extricating a detainee from his cell), we wrote:

> Where, as here, force is employed in the course of resolving a disturbance, the pertinent inquiry is whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Factors relevant to that inquiry include whether jail officials perceived a threat to their safety and the safety of other inmates, whether there was a genuine need for the application of force, whether the force used was commensurate with the need for force, the extent of any injury inflicted, and whatever efforts the officers made to temper the severity of the force they used. *See also Forrest v. Prine*, 620 F.3d 739, 744–45 (7th Cir. 2010); *Lewis v. Downey*, 581 F.3d 467, 475–77 (7th Cir. 2009).

*Id.* at 668 (additional citations omitted) (internal quotation marks omitted).

Our dissenting colleague believes that our cases have been ambiguous on the question of intent, but we see no serious ambiguity here. Our cases make clear that, although we employ the objective criteria of the Fourth Amendment as a touchstone by which to measure the gravity of the defendant

officer's conduct, we also recognize, quite clearly, the need for a subjective inquiry into the defendant's state of mind in performing the activity under scrutiny. In determining whether the defendant officer had the requisite state of mind—at least recklessness—the same criteria used to measure the defendant's lack of care are a useful benchmark. This is because, as *Titran* intimated, the gravity of the offense and the requisite intent are closely linked. *Titran* is clear that the strength of this link under a particular set of facts may mean that the inference of intent is so strong that no further inquiry need be made. *See Titran*, 893 F.2d at 148 ("If the officers intentionally restrained, jolted, and roughed up Titran without physical provocation from her, their behavior was unreasonable."). But when the inference is less strong, the cases do make clear that some examination of intent is appropriate, and that the distinction makes a mechanical application of Fourth Amendment objective standards impossible. *See id.* at 147 ("Subtle differences between Fourth and [Fourteenth] Amendment standards *are inevitable on account of this mental element*." (emphasis added)).[16]

We think at this point it is useful to pause and be certain that we have not lost sight of the basic point of *Bell*. *Bell* teaches

---

[16] The dissent also suggests that under *Daniels v. Williams*, 474 U.S. 327 (1986), the only "intent" requirement applicable in Fourteenth Amendment cases is the general requirement of intentional rather than negligent acts, necessary to impose liability for *any* alleged constitutional violation. The difficulty with this view is that *Titran v. Ackman*, 893 F.2d 145 (7th Cir. 1990), and other of our cases already have held that there is something unique about the Fourteenth Amendment that imposes a burden not imposed under the Fourth Amendment.

that the central inquiry relevant in a Fourteenth Amendment case brought by a pretrial detainee is whether the state *punished* him—as opposed to whether it had merely held him, restricted him, or applied a measure of force in a manner consistent with and expected of constitutional restraints on liberty prior to trial. *Bell* was, of course, a conditions of confinement case, *see supra* n.14, but it notes the necessity of determining from the facts whether there is an *intent* to punish.

Finally, we note that although *some* consideration of intent is embraced by our cases, it is limited in significant measure by the fact that it is discernable from objective considerations[17]. *See Wilson*, 83 F.3d at 876.

### 3.

With these principles in mind, we now turn to the jury instruction at issue in the case before us.

On the subject of excessive force, the jury was instructed as follows:

---

[17] We acknowledge and are grateful for the fine work of the Committee that developed this circuit's impressive Pattern Civil Jury Instructions. Nevertheless, while those instructions represent learned studies of the law of this circuit, they are persuasive only to the extent that they accurately restate the law of this circuit. *See United States v. Burke*, 781 F.2d 1234, 1239 n.2 (1985) ("Although the pattern instructions are suggestive rather than absolutely binding, a decision of this court is authoritative."). Moreover, it is not clear from the commentary to the Pattern Instruction that the issue we now confront was considered squarely. Notably, there is no mention of the above cases and the contrary language included within them.

Excessive force means force applied recklessly that is unreasonable in light of the facts and circumstances of the time. Thus, to succeed on his claim of excessive use of force, plaintiff must prove each of the following factors by a preponderance of the evidence:

(1) Defendants used force on plaintiff;

(2) Defendants' use of force was unreasonable in light of the facts and circumstances at the time;

(3) Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and

(4) Defendants' conduct caused some harm to plaintiff.

In deciding whether one or more defendants used "unreasonable" force against plaintiff, you must consider whether it was unreasonable from the perspective of a reasonable officer facing the same circumstances that defendants faced. You must make this decision based on what defendants knew at the time of the incident, not based on what you know now.

Also, in deciding whether one or more defendants used unreasonable force and acted with reckless disregard of plaintiff's rights, you may consider such factors as:

- The need to use force;

- The relationship between the need to use force and the amount of force used;

-  The extent of plaintiff's injury;

- Whether defendants reasonably believed there was a threat to the safety of staff or prisoners; and

- Any efforts made by defendants to limit the amount of force used.[18]

Mr. Kingsley argues that the instructions were erroneous and confusing because he was required to establish that the officers had acted with "reckless disregard" for his safety, when the instruction should have allowed the jury to find the existence of punishment on the basis of wholly objective factors.

A faithful adherence to the case law that we have discussed precludes our accepting this contention. As we have noted earlier, our cases are clear that the existence of intent—at least recklessness—*is* a requirement in Fourteenth Amendment excessive force cases. The court's instruction reflected this requirement in our case law. The jury was told specifically that, in determining whether the intent element is satisfied, that is, whether the defendants "acted with reckless disregard of plaintiff's rights," it "may consider" a non-exhaustive list of five factors, drawn almost verbatim from *Wilson*. In short, the instruction required a level of intent at least equivalent to

---

[18]  R.146 at 3–4.

recklessness, measured largely by the objective factors that we already have identified.[19]

The jury was instructed adequately on the elements of Mr. Kingsley's Fourteenth Amendment cause of action.[20]

---

[19] The dissent contends that "[t]he clearest thing about *Wilson* is that it reversed the use of the confusing amalgam of an instruction." Dissent at 31. In *Wilson*, this court approved an instruction that tracked very closely the language used in this case, and turned on "whether the prohibited punitive intent was present." *Wilson v. Williams*, 83 F.3d 870, 877 (7th Cir. 1996). It reversed only on another element, completely absent from our present instruction, of a "good faith" defense. *Id.*

[20] The dissent also contends that the instruction was confusing not only because it introduced the extraneous concept of intent, but also because it did so in three separate and quite different ways. *See* dissent at 35-36. We think this overstates the point and overly parses the instruction, which is not our settled approach on review of such matters. True enough, the instruction uses the term "reckless" three times, in three separate phrases. Its first use, that the "force [must have been] applied recklessly" merely tracks the usage that the dissent essentially admits is legally proper; that is, it says that the force must be applied in a manner displaying more culpability than negligence (i.e., the taser did not go "off by accident," *id.* at 39). The evidence admittedly did not suggest that it had, but no reasonable juror would have been confused as to the meaning under the circumstances. The second usage is less clear, but the surrounding context cures any confusion. Although the jury is asked to determine if the defendants "recklessly disregarded plaintiff's safety"—a less than ideal phraseology it is then told precisely *how* to determine it, by whether they had "failed to take reasonable measures to minimize harm to the plaintiff." The final usage is part of the phrase which introduces the uncontroversial objective considerations.

## B.

Mr. Kingsley next submits that the district court erred in instructing the jury on the issue of harm. He contends that he should not have been required to demonstrate harm at all and, if harm is an element, that the use of a taser establishes the requisite injury as a matter of law. For this latter proposition, Mr. Kingsley relies on *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009), in which we held that use of a taser qualified as more than a de minimis application of force. In the alternative, he argues that, even if the harm instruction itself were proper, the jury should not have been further instructed that "[a] person can be harmed even if he did not suffer a severe injury."[21] In his view, this clarifying instruction only confused the matter by "allow[ing] the jury to consider whether the use of the taser on Mr. Kingsley met some threshold standard of injury to qualify as harm."[22] The defendants counter that the plaintiff waived any objection and that, in any event, the instruction as given was not erroneous.

## 1.

We begin with the question of waiver. At trial, Mr. Kingsley did object to the inclusion of harm as an element of the excessive force claim. Our reading of the transcript makes clear, however, that his objection was that, because the defendants repeatedly had contended that there had been no

---

[21] R.146 at 4.

[22] Appellant's Br. 20.

*lasting* injury, the inclusion of the element of harm might be misread as requiring *more* than de minimis harm. Counsel for Mr. Kingsley therefore requested a clarifying instruction that "pain is considered harm."[23] The court simply stated, "I think I'll add 'a person can be harmed even if he does not suffer a lasting injury or … .'"[24] At this point, plaintiff's counsel interjected, "Or severe injury."[25]

Although Mr. Kingsley objected to the inclusion of "harm" as an element, counsel described the objection as concern that the inclusion of "harm" might be construed erroneously by the jury to require some lasting injury. Notably, counsel stated: "[W]e submit that in the Seventh Circuit, *injury* isn't a required element of an excessive force claim. I think the use of harm *is an element*."[26] Counsel specifically further told the court that "[i]t's just the extent that [the defendants are] going to argue and there will be any suggestion to the jury that some form of lasting injury is required under the law, *that's what we would have the objection to*."[27]

We do not discern on the record any argument presented to the district court that harm itself is not an element of the cause of action or that tasing constitutes harm per se.

---

[23]  R.156 at 79.

[24]  *Id.*

[25]  *Id.*

[26]  *Id.* at 78 (emphasis added).

[27]  *Id.* at 79 (emphasis added).

Consequently, we must agree that Mr. Kingsley's current position on the question of harm itself, or harm per se, has been forfeited.

**2.**

We now turn to the question whether the district court's clarifying instruction introduced confusion by suggesting to the jury that some unspecified level of injury was required to establish harm. The transcript makes clear that, after voicing the objection to the inclusion of harm and stating that it was out of concern that the defendants would argue need for a lasting injury, counsel for Mr. Kingsley participated in the modification of the instruction and specifically suggested the inclusion of the "[o]r severe injury" language that ultimately was given by the district court to ameliorate the concerns raised in the prior objection. In short, the clarifying instruction was offered at Mr. Kingsley's request, and for the very purpose of minimizing any risk that the jury would construe harm as a significant injury. Mr. Kingsley's counsel actively participated with the district court in achieving an instruction that would be satisfactory in that regard and did not continue an objection to the language as presenting further difficulty or insist on a more specific instruction that any amount of pain qualified as harm. Accordingly, the current objection is waived.

In any event, even if the merits of these objections were properly before us, we previously have approved an instruction in this context that included a requirement of "some harm." *See Wilson*, 83 F.3d at 876. Although it would not have been error for the district court to define injury in a taser

case in terms of pain, *see Lewis*, 581 F.3d at 475; *see also Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992), the instruction given by the district court adequately permitted counsel to argue that the pain inflicted fulfilled the injury requirement of the cause of action. Indeed, counsel so argued.

There was no reversible error with respect to the requirement of a showing of "harm" in this case.

## Conclusion

Because the jury instructions were neither erroneous nor confusing statements of the law of this circuit, the judgment in favor of the defendants is affirmed.

AFFIRMED

HAMILTON, *Circuit Judge*, dissenting. I respectfully dissent. This case presents an important issue about the extent of a pretrial detainee's constitutional right to be free from punishment and excessive force. If a pretrial detainee can prove that a correctional officer used objectively unreasonable force against him, it should be self-evident that the detainee was "punished" without due process of law. In this case, however, the district court's jury instruction on excessive force added an unnecessary and confusing element of "reckless" conduct or purpose to the required elements of plaintiff's claim.

The Committee on Pattern Civil Jury Instructions of the Seventh Circuit considered this question in 2009. The committee wisely omitted such language of recklessness or purpose from its Pattern Instructions 7.08 and 7.09 for excessive force claims by pretrial detainees. We should remand for a new trial with instructions tracking those pattern instructions. That way we could avoid the puzzle posed by the majority opinion: When does the Constitution allow law enforcement and correctional officers to use objectively unreasonable force against a person not convicted of a crime?

I.  *The Problem: Excessive Force Claims by Pretrial Detainees*

As the majority explains, when law enforcement officers apply physical force to suspects, detainees, or prisoners, the constitutional standard depends on the status of the person on the receiving end. A person who is not in custody and who is a target of police force, such as in an arrest or investigative stop, is protected by the Fourth Amendment's prohibition on unreasonable seizures of the person. The Fourth Amendment standard is objective: was the application of force unreasonable

in light of all the relevant circumstances confronting the officer at the time? *Graham v. Connor*, 490 U.S. 386, 395–97 (1989); Federal Civil Jury Instructions of the Seventh Circuit No. 7.08 & 7.09. On the question of liability for a Fourth Amendment violation, the officer's subjective purposes do not matter as long as the force was used intentionally rather than by accident. *Graham*, 490 U.S. at 397–99.

A person convicted of a crime and serving a custodial sentence is protected by the Eighth Amendment's prohibition on cruel and unusual punishment. The Eighth Amendment standard differs from the Fourth because the officer's state of mind is critical. The plaintiff must prove that the correctional officer intentionally used extreme or excessive cruelty toward the plaintiff for the purpose of harming him, and not in a good faith effort to maintain or restore security or discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); Federal Civil Jury Instructions of the Seventh Circuit No. 7.15. In *Graham*, the Supreme Court explained that the less protective Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." 490 U.S. at 398–99, quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).

Both the objective standard under the Fourth Amendment for free citizens and the subjective standard under the Eighth Amendment for sentenced prisoners are well established in the law. The person in between is the pretrial detainee. That person is protected from excessive force by the Due Process Clauses of the Fifth or Fourteenth Amendments because he may not be "punished" until he has been adjudged guilty

through due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979); *Ingraham*, 430 U.S. at 671 n. 40. We have recognized that pretrial detainees receive more protection than convicted prisoners. *E.g.*, *Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009).

Just what the excessive force standard for a pretrial detainee looks like in detail is not as clear. The detainee may often be held in a jail with convicted offenders under conditions that seem indistinguishable from prison, yet he has not been convicted and is still entitled to a presumption of innocence. The Supreme Court has not settled the question of the standard for pretrial detainees. *Graham* explicitly left it open. 490 U.S. at 395 n.10. Our circuit's case law points in the direction of a standard identical or close to the objective Fourth Amendment standard, but there are conflicting signals in our opinions that we should clarify here.[1]

---

[1] There is a long-standing circuit split on the substantive standard for these excessive force claims by pretrial detainees. Compare, e.g., *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) (applying objective Fourth Amendment standard); and *Pierce v. Multnomah County*, 76 F.3d 1032, 1042–43 (9th Cir. 1996) (reversing defense verdict and ordering new trial with jury instructions using objective Fourth Amendment standard); with *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying Eighth Amendment standard); and *Fuentes v. Wagner*, 206 F.3d 335, 346–48 (3d Cir. 2000) (applying Eighth Amendment standard to use of force to quell jail disturbance); see generally Karen M. Blum & John J. Ryan, *Recent Developments in the Use of Excessive Force by Law Enforcement*, 24 Touro L. Rev. 569, 573 (2008) (standards "vary widely"); Baker, *Wilson v. Spain: Will Pretrial Detainees Escape the Constitutional "Twilight Zone"?*, 75 St. John's L. Rev. 449 (2001). Because of the effect of qualified immunity in litigation of these

(continued...)

My colleagues rely heavily on *Wilson v. Williams*, 83 F.3d 870 (7th Cir. 1996), where a pretrial detainee claimed that he had been punished by the use of excessive force, but its guidance does not support the majority here. In *Wilson* we approved the portion of a jury instruction that tracked the objective Fourth Amendment standard. *Id*. at 876 ("While this sentence, lifted verbatim from *Graham*…was intended to apply to excessive force claims raised explicitly under the Fourth Amendment, we do not consider it, nor the test which it espouses, inappropriate in the context here."). In other respects, though, the instruction given in *Wilson* was a confusing amalgam of Fourth Amendment, Eighth Amendment, and punitive damages law, along with a defense of subjective good faith that we said was erroneous. See *id*. at 877. We also noted that convicted prisoners and pretrial detainees are often held together in the same facility, so it might be impractical to have different standards, at least in the context of a jail disturbance. *Id*. at 876.

On this last point, though, recall the caution in *Bell* and *Graham* that the Eighth Amendment standard applies only after the state has complied with the constitutional protections needed to convict a person of crime. 441 U.S. at 535; 490 U.S. at 398–99. In light of *Bell* and *Graham* and their constitutional foundations, there is no apparent reason why a state's unilateral decision to house pretrial detainees with convicted

---

[1] (...continued)

claims, I respectfully submit that our court and/or the Supreme Court needs to bring greater clarity to this question for the sake of both detainees and law enforcement and correctional personnel.

prisoners—for financial or other institutional reasons— should have the effect of reducing the constitutional protections of pretrial detainees who are still presumed innocent. The clearest thing about *Wilson* is that it reversed the use of the confusing amalgam of an instruction. It does not support the recklessness instruction given here.

More enlightening is *Titran v. Ackman*, 893 F.2d 145 (7th Cir. 1990), where a pretrial detainee brought a claim for excessive force. We applied the objective reasonableness standard identical to the Fourth Amendment: "It does not follow [from the transition from arrest to detention] that officers acquired greater ability to assault and batter Titran." *Id.* at 147. We explicitly rejected one defendant's effort to apply a subjective standard, and we noted: "Multiple standards of official conduct send confusing signals that undermine the force of the law…." *Id.* Our holding was clear: "If the officers intentionally restrained, jolted, and roughed up Titran without physical provocation from her, their behavior was unreasonable." *Id.* at 148. That looks like an objective standard.

My colleagues make much of a sentence in *Titran* between the two I have quoted: "Given *Daniels v. Williams* and *Archie v. City of Racine*, holding that the Due Process Clause does not proscribe negligence or even gross negligence, the search for 'punishment' cannot be wholly objective." *Id.* at 147 (citations omitted). As explained below, however, the point of *Williams* and *Archie* is only that the officer's conduct must be intentional. Negligent accidents do not violate the Constitution. Neither decision added a subjective element of wrongful purpose into the excessive force standard for a pretrial detainee, nor did

*Titran* do so. Nevertheless, I will cheerfully acknowledge that our few opinions on excessive force against pretrial detainees leave some room for debate. This case provides an opportunity to clarify the standard, but we are missing that opportunity.

II.  *The Pattern Jury Instructions*

The Committee on Pattern Civil Jury Instructions of the Seventh Circuit took up this problem in 2009 and published with approval of the Circuit Council the pattern jury instructions that advise using the same objective reasonableness standards for excessive force claims by pretrial detainees as well as arrestees. The Circuit Council's publication does not imply substantive approval for every line of the instructions, but the committee chaired by Judge Robert H. Miller, Jr., included talented judges and practitioners representing a range of perspectives, and the committee invited and received public comment on its draft instructions. The committee's work deserves our respect and close attention.

Pattern Instructions 7.08 and 7.09 were drafted for use in excessive force cases for both arrestees under the Fourth Amendment and pretrial detainees under the Fifth and Fourteenth Amendments. The full texts of the instructions and committee comments are attached as an appendix to this opinion.

The elements instruction, 7.08, includes three elements:

1.  Defendant used unreasonable force against Plaintiff;

[2. Because of Defendant's unreasonable force, Plaintiff was harmed;]

[3. Defendant acted under color of law.]

The second and third elements are in brackets because there will often be no dispute about them and because it is not clear whether "harm" is a distinct element, as the committee's comment explains.

Instruction 7.09 then explains what is meant by excessive or unreasonable force, and it does so in purely objective terms:

You must decide whether Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced. You must make this decision based on what the officer knew at the time of the arrest, not based on what you know now. In deciding whether Defendant's use of force was unreasonable, you must not consider whether Defendant's intentions were good or bad.

In performing his job, an officer can use force that is reasonably necessary under the circumstances.

The committee chose not to identify specific factors, but offered a proposed list for judges who believe such a list might aid a jury:

— the need for the use of force;

— the relationship between the need for the use of force and the amount of force used;

— the extent of the plaintiff's injury;

— any efforts made by the defendant to temper or limit the amount of force;

— the severity of the crime at issue;

— the threat reasonably perceived by the officer(s);

— whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing.

These pattern instructions are more consistent with the applicable constitutional standard, see *Graham*, *Titran*, and *Wilson*, and much less confusing than the instruction used in this case. The problem is the concept of "recklessness" in the district court's instruction.

III.    *The Instruction Given in This Trial*

The jury instruction given in plaintiff Kingsley's trial, quoted by the majority at pages 8–9, goes astray by introducing the concept of reckless conduct as an additional element the plaintiff must prove. The first line of the instruction given in this trial told the jury that excessive force is "force applied *recklessly* that is unreasonable in light of the facts and circumstances of the time." In the Fourth Amendment context, excessive force is force that is unreasonable in light of the facts and circumstances the officer faced. *Graham*, 490 U.S. at 396–97; *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013); *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012).

Assuming the pretrial detainee plaintiff can prove force "that is unreasonable in light of the facts and circumstances of the time," which is the correct standard, the concept "recklessly" adds a vague and confusing extra hurdle for the plaintiff. Put another way, how and why would it be constitutional for an officer to use force against a pretrial detainee that was "unreasonable in light of the facts and circumstances of the time," since this instruction invites that very possibility? How and why would objectively unreasonable force be deemed anything other than "punishment" that would be imposed on the detainee without due process of law? See *Bell*, 441 U.S. at 535 ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").

The instruction here also introduced a second version of recklessness in the third element, saying the plaintiff must show: "Defendants knew that using force presented a risk of harm to plaintiff, but they *recklessly disregarded plaintiff's safety* by failing to take reasonable measures to minimize the risk of harm to plaintiff." I am not at all sure what that means, and I don't know how a juror should have interpreted it. Must the plaintiff come forward with evidence of reasonable measures that would have minimized the risk of harm? Would simply refraining from the alleged use of force—in this case, using a taser on an allegedly compliant prisoner, or refraining from smashing his head into a concrete bed—have been sufficient? Or was something else required? (I realize that whether the plaintiff was actually compliant by that time and how force was used were hotly debated at trial, but jury instructions must

guide the jury on the law applicable to both sides' versions of the facts.)

Adding to the confusion, the same jury instruction then used a third version of recklessness, telling the jury: "in deciding whether one or more defendants used unreasonable force and acted with *reckless disregard of plaintiff's rights*, you may consider such factors as…." A juror trying to follow the instructions carefully might ask at this point where the idea of reckless disregard of plaintiff's rights came from and what it means. Something different from use of excessive force? Something different from the first two uses of recklessness? Does this instruction mean the defendant must have realized he was violating the detainee's rights, or at least not cared whether he was doing so? Reckless disregard for the plaintiff's rights will support a punitive damage award, so that admittedly subjective concept is used in punitive damage instructions. See *Smith v. Wade*, 461 U.S. 30, 56 (1983); Pattern Inst. No. 7.24. But reckless disregard of the plaintiff's rights is simply not an element of the plaintiff's core case for liability. It was an error to add it to the elements instruction.

So the district court's instruction was erroneous for two reasons. First, it introduced an extra element—recklessness—that is simply not required in a pretrial detainee's claim for excessive force. Second, its treatment of that extra element in three different ways made this instruction a confusing amalgam that a jury could not reasonably be expected to follow.

As we consider the district court's instruction, we should also step back a moment from the details of the case law and

ask whether and why a pretrial detainee's claim for excessive force should differ at all from that of a person being arrested or stopped. The pretrial detainee is still cloaked in the presumption of innocence and may not be punished. *Bell*, 441 U.S. at 535; see also *Graham*, 490 U.S. at 398–99. Ordinarily, of course, a judge will have found probable cause to detain the person. If the detention is prolonged, a judge in the federal system ordinarily will have found either a risk of flight or a danger to the community. See 18 U.S.C. §3142(e).

Even those federal detainees are still presumed innocent, though, and should not be subject to punishment before a conviction. And in many state justice systems, a pretrial detainee may remain in jail for weeks or even months simply because he cannot afford the premium for the presumptive bond set in his case. For those many thousands of people in the criminal justice system, we should recognize that the intentional use of objectively unreasonable force against them amounts to punishment without due process of law and violates the Constitution. They are not and should not be required to prove more in terms of reckless disregard for or intentional violation of their rights. The transition from arrest to pretrial detention does not give officers "greater ability to assault and batter" the detainees. *Titran*, 893 F.2d at 147.

IV.     *The Role of Intentional or Reckless Conduct*

To support the subjective recklessness element in the district court's instruction, my colleagues cite the case law holding that a plaintiff suing under 42 U.S.C. § 1983 for a constitutional violation must show intentional conduct. They then treat reckless conduct as a form of intentional conduct.

See above at 13, citing *Daniels v. Williams*, 474 U.S. 327, 334 (1986), and *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc). That reasoning mistakenly combines two separate issues. The same confusion appeared in *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1094 (7th Cir. 1986), and was repeated in *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988), both also cited by the majority. The Pattern Instruction Committee carefully and correctly kept the two issues separate.

In *Daniels* the Supreme Court resolved a circuit split on whether negligent conduct can violate the individual rights guaranteed by the Constitution. The Court's answer was no. In *Daniels* a jail inmate claimed he had been deprived of liberty when he was injured by slipping on a pillow that an employee had negligently left on a staircase. The Court left such claims from accidental conduct to state tort law. 474 U.S. at 332. At the same time, the Court carefully drew the distinction that my colleagues overlook. In response to an argument that prison officials' negligent failure to comply with procedural requirements in depriving a prisoner of good-time credit should be actionable, the Court explained: "We think the relevant action of the prison officials in that situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause." *Id*. at 333–34. Applying the same distinction here, the focus should be on a deliberate decision to use force, not a negligent or reckless or intentional failure to comply with the constitutional standard for using force.

In the context of an excessive force claim, *Daniels* means that if, during the removal of Kingsley from his cell, the application of force was not intentional—the taser went off by accident, for example, or a guard slipped, fell, and knocked the handcuffed inmate down so that his head hit the floor—then there would have been no constitutional violation. Reckless conduct is generally recognized as equivalent to intentional conduct for these purposes, when it is equivalent to criminal recklessness, meaning that the actor is subjectively aware of the high risk of harm and then disregards it. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Slade v. Board of School Directors of City of Milwaukee*, 702 F.3d 1027, 1029 (7th Cir. 2012); see also *Archie*, 847 F.2d at 1219.

In an appropriate case, therefore, it could be appropriate to instruct a jury that if the defendant's use of force was reckless (perhaps, for example, running through a crowd with a finger on the trigger of an unaimed gun), that would be sufficient to show intentional use of force. That would be an appropriate role for the concept of recklessness in an excessive force case. But there is no need for such an instruction unless the defense contends the use of force was unintended. The defense did not argue that here, so there was no need for a subjective element in the instruction.[2]

---

[2] Section 1983 and *Bivens* excessive force cases in which defendants contend the application of force was accidental appear to be relatively unusual, but they do arise. The Pattern Instruction Committee allowed for them. Its comment on Instruction 7.08 advises judges in such cases to break the first element of unreasonable force into two parts: intentional use of force and unreasonable use of force.

My colleagues' reliance on the need for intentional conduct to justify the subjective recklessness elements of the instruction given here also proves too much. As explained above, intentional conduct is needed to show *any* constitutional violation, including the Fourth Amendment, where the standard for excessive force is objective. See *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"), citing *Daniels*, 474 U.S. at 328; *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989) ("seizure" requires "intentional acquisition of physical control" through "means intentionally applied"). That is why an accidental police shooting is not actionable under the Fourth Amendment, see *Watson v. Bryant,* 532 Fed. Appx. 453, 457 (5th Cir. 2013); *Pleasant v. Zamieski*, 895 F.2d 272, 276–77 (6th Cir. 1990); *Dodd v. City of Norwich*, 827 F.2d 1, 7–8 (2d Cir. 1987) (on reargument), but an *intentional* shot that accidentally hits the wrong person is a seizure of that person that may be actionable under the Fourth Amendment, *Fisher v. City of Memphis*, 234 F.3d 312, 317–18 (6th Cir. 2000).

The court in *Fisher* explained precisely the difference that my colleagues' reasoning overlooks. After recognizing that a Fourth Amendment violation requires intent, not negligence, the Sixth Circuit explained: "However, the intent in question is the intent to commit the act, not the intent that a certain result be achieved. Therefore, Officer Taylor's act of firing the gun was intentional, even if the result was not one he sought to achieve. Instructing the jury that more than negligence was required would likely confuse the jury as to the intent question." *Id*. at 317. Again, because the defendants at this trial

did not claim the use of force was accidental, there was no reason to introduce the concept of recklessness into the excessive force instruction.

Before closing, I should add that I have considerable sympathy for both this district judge and any other judge trying to distill our case law into a coherent elements instruction for a pretrial detainee's excessive force claim. Some of the cases cited by the majority—especially *Wilson*—reflect similar confusion. But that is why the work of the Pattern Instruction Committee was so valuable. We should endorse their work, not reject it.

Finally, I agree with the majority that plaintiff Kingsley waived in the district court his challenge to the "harm" element of the court's instruction on excessive force. As for the merits of that challenge, which the majority also addresses, I see no prejudicial error by including harm as an element. The Pattern Instruction Committee also confronted this issue as part of its Instruction 7.08 and could not come to a definitive conclusion. The committee's comment gives good advice and leaves the choice to the sound judgment of the district court. In most excessive force cases, harm is likely to be so obvious that it does not require treatment as a separate element. (It will ordinarily be relevant in deciding  whether the force applied was excessive or in deciding on an amount of damages.) If the defense argues that the force used was too minimal to violate the plaintiff's rights, the plaintiff should not be prejudiced if the district judge includes harm as an element but also instructs the jury, as the court did here, that pain can be harm for purposes of proving that element.

For these reasons, I would reverse the judgment of the district court and remand for a new trial with jury instructions that track Seventh Circuit Pattern Jury Instructions 7.08 and 7.09.

**APPENDIX**

**7.08 FOURTH AMENDMENT/FOURTEENTH AMENDMENT: EXCESSIVE FORCE AGAINST ARRESTEE OR PRETRIAL DETAINEE — ELEMENTS**

In this case, Plaintiff claims that Defendant used excessive force against him. To succeed on this claim, Plaintiff must prove each of the following things by a preponderance of the evidence:

1. Defendant used unreasonable force against Plaintiff;

[2. Because of Defendant's unreasonable force, Plaintiff was harmed;]

[3. Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you should find for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that Plaintiff did not prove any one of these things by a preponderance of the evidence, then you should find for Defendant, and you will not consider the question of damages.

**Committee Comments**

a. **Unreasonable Force:** For authority regarding the "unreasonable force" element of the claim, see *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Deering v. Reich*, 183 F.3d 645 (7th Cir. 1999). Although *Graham* and *Garner* are Fourth Amendment cases involving arrestees, *Wilson v. Williams*, 83 F.3d 870, 876 (7th Cir. 1996), states that the same standard applies to pretrial detainees. A

separate instruction applies to cases involving convicted prisoners.

If the defendant contends that the application of force was accidental, the court may wish to break the first element into two:

1.  Defendant intentionally used force against Plaintiff;

2.  The force Defendant used was unreasonable;

b.  **Harm to Plaintiff:** Although some other circuits include an element of "damage" in their pattern instruction, *see, e.g.,* EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 4.30 (1999), the Committee believes that there is significant doubt as to whether damage, or "harm" as that term is commonly understood, is actually required for a finding of liability under §1983. Though "harm" in the commonly-understood sense is likely to exist in most excessive force cases, some cases will arise in which it does not, *e.g.,* a situation in which an officer strikes the plaintiff with his hand but leaves no mark and causes no lingering injury or pain. In such cases, the court will need to determine whether the jury should be instructed on this point.

In *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir. 1985), the court held that an officer's use of force was unconstitutional if it (1) caused severe injuries; (2) was grossly disproportionate to the need for action under the circumstances; and (3) was inspired by malice or shocked the conscience. *Gumz*, however, was overruled by *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir. 1987), which used the same "totality of the circumstances test" that was later adopted by

the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). In *Lanigan v. Village of East Hazel Crest, Illinois*, 110 F.3d 467 (7th Cir. 1997), the court upheld a claim based on force consisting of "one violent push and poke," noting that the plaintiff "need not have been injured to have an excessive force claim." *Id.* at 470 n.3. In *McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002), the court addressed a claim arising from an incident in which no physical force was used, but officers pointed their weapons at the plaintiffs. Though it determined that the officers were entitled to qualified immunity, and indicated that the Fourth Amendment appeared to require *some* use of force, *id.* at 467, the majority ended its opinion with the statement "we do not foreclose the possibility that the circumstances of an arrest could become 'unreasonable' without the application of physical force." *Id.* at 468. *See also Herzog v. Village of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002) (refusal to loosen chafing handcuffs or shoving an arrestee would constitute actionable excessive force).

Even if, as *McNair* indicates, an application of force is required in order to implicate the Fourth Amendment, it is not at all clear that the plaintiff must suffer "harm" in order to obtain a finding of liability; the availability of nominal damages in excessive force cases suggests that "harm" is not a requirement. *See, e.g., Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996) (indicating that nominal damages may be awarded in a Fourth Amendment excessive force case where no injury resulted from the use of excessive force, where the evidence of actual injury is not credible, or where the injury has no monetary value). Because the issue of whether a plaintiff must prove "harm" is not definitively resolved, the Committee

placed the second element in brackets, indicating that a court should give this part of the instruction to the jury at its discretion.

c. **Third element:** The third element should be eliminated if the "color of law" issue is not in dispute.

d. **Single Element Instruction:** If the second and third elements are eliminated, only one element will remain, and the instruction's second sentence should read as follows: "To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant used unreasonable force against him."

### 7.09 FOURTH AMENDMENT/FOURTEENTH AMENDMENT: EXCESSIVE FORCE — DEFINITION OF "UNREASONABLE"

You must decide whether Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced. You must make this decision based on what the officer knew at the time of the arrest, not based on what you know now. In deciding whether Defendant's use of force was unreasonable, you must not consider whether Defendant's intentions were good or bad.

In performing his job, an officer can use force that is reasonably necessary under the circumstances.

[An officer may use deadly force when a reasonable officer, under the same circumstances, would believe that the suspect's actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm. [It is not

necessary that this danger actually existed.] [An officer is not required to use all practical alternatives to avoid a situation where deadly force is justified.]]

**Committee Comments**

a. **Authority:** *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *Deering v. Reich*, 183 F.3d 645 (7th Cir. 1999).

b. **Factors:** Case law establishes a number of factors that may be relevant to the jury's determination of whether a particular use of force was unreasonable. The Committee did not list these factors in the instruction because the jury is to consider *all* circumstances, and the listing of some might suggest that others are irrelevant. However, a court may wish to consider giving a list of factors for the jury's consideration, and if it elects to do so the following is proposed:

— the need for the use of force;

— the relationship between the need for the use of force and the amount of force used;

— the extent of the plaintiff's injury;

— any efforts made by the defendant to temper or limit the amount of force;

— the severity of the crime at issue;

— the threat reasonably perceived by the officer(s);

— whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing.

*See Graham v. Connor*, 490 U.S. at 396 (fifth, sixth, and seventh factors). In *Wilson v. Williams*, 83 F.3d 870 (7th Cir. 1996), a Fourteenth Amendment excessive force case involving a pretrial detainee, the Seventh Circuit listed factors one, two, three, four, and six from the above list, and stated that they are "generally relied on in the Fourth Amendment excessive force context." *Id.* at 876. For this proposition, however, the court cited *Hudson v. McMillian*, 503 U.S. 1, 7 (1992), which was an Eighth Amendment case, not a Fourth Amendment case. *See generally* Eighth Circuit Manual of Model Jury Instructions (Civil) 4.10 (1999) (using factors one, two, and three).

    c.  **Deadly Force:** The final (bracketed) paragraph applies only in cases involving an officer's use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985); *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988). With regard to the final (bracketed) sentence of this paragraph, *see Deering v. Reich*, 183 F.3d 645, 652-653 (7th Cir. 1999); *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994). The fact that a particularized instruction is proposed for deadly force cases does not preclude the consideration or giving of a particularized instruction in other types of cases, for example, those involving a fleeing felon or an officer's claim of self-defense.